# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| BRITTANY M. G., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:23CV53 |
| | ) | |
| MARTIN J. O'MALLEY, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant.[1] | ) | |

## MEMORANDUM OPINION AND ORDER
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Brittany M. G., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 2.) The Commissioner has filed the certified administrative record (Docket Entry 4 (cited herein as "Tr. ___")), and both parties have submitted dispositive briefs in accordance with Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) (Docket Entry 7 (Plaintiff's Brief); Docket Entry 8 (Commissioner's Brief);

---

[1] On December 20, 2023, President Joseph R. Biden, Jr., appointed Martin J. O'Malley as Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley should substitute for Kilolo Kijakazi as Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Docket Entry 9 (Plaintiff's Reply)).  For the reasons that follow, the Court will enter judgment for the Commissioner.[2]

## I.  PROCEDURAL HISTORY

Plaintiff applied for DIB (Tr. 350-54), alleging a disability onset date of May 1, 2015 (see Tr. 350).  Shortly thereafter, Plaintiff amended her onset date to July 31, 2016, the date she alleges she stopped working.  (See Tr. 380-81, 383.)  Upon denial of that application initially (Tr. 122-37, 178-81) and on reconsideration (Tr. 138-53, 184-91), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 192).  Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing.  (Tr. 40-69.)  The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act.  (Tr. 154-68.)  The Appeals Council thereafter granted Plaintiff's request for review (see Tr. 169-76, 465-69), concluding that 1) the record lacked sufficient information to support the ALJ's finding that Plaintiff could return to her past relevant work as a clerk (see Tr. 172), 2) the ALJ's decision did not define the terms low-stress and low-pressure in the RFC (see id.), 3) the ALJ did not adequately evaluate the opinions of the consultative psychological examiner (see id.), and 4) the ALJ failed to address some of the opinions of the state agency psychological consultants (see Tr.

_____

[2] On consent of the parties, this "case [wa]s referred to [the undersigned] United States Magistrate Judge [] to conduct all proceedings . . ., to order the entry of judgment, and to conduct all post-judgment proceedings therein." (Docket Entry 10 at 1.)

2

173).   The Appeals Council thus ordered the ALJ to "offer [Plaintiff] an opportunity for a new hearing, take any further action needed to complete the administrative record and issue a new decision." (Id.)

The ALJ held a new hearing, which Plaintiff, her attorney, a new VE, and a medical expert ("ME") attended.  (Tr. 70-121.) Following that hearing, the ALJ found Plaintiff not disabled under the Act (Tr. 12-39), and the Appeals Council later denied Plaintiff's request for review (Tr. 1-6, 347-49, 496-500), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings later adopted by the Commissioner:

1.   [Plaintiff] last met the insured status requirements of the . . . Act on December 31, 2021.

2.   [Plaintiff] did not engage in substantial gainful activity during the period from her alleged onset date of July 31, 2016, through her date last insured of December 31, 2021.

. . .

3.   Through the date last insured, [Plaintiff] had the following severe impairments: alcohol use disorder; seizure disorder status/post traumatic brain injury; and panic disorder.

. . .

4.   Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

3

. . .

5.   . . . [T]hrough the date last insured, [Plaintiff]
had the residual functional capacity to perform a full
range of work at all exertional levels but with the
following nonexertional limitations: [s]he must avoid all
exposure to workplace hazards such as unprotected
heights, open bodies of water, and moving machine parts;
she is unable to operate a motor vehicle or other heavy
equipment; she can never climb ladders, ropes, or
scaffolding; can have occasional interaction with
coworkers and supervisors but never with members of the
general public.  She would be off-task for 15 minutes
twice per month secondary to panic attacks, and have an
unscheduled absence once every other month secondary to
a seizure and needing to leave the workplace for
recovery.

. . .

6.   Through the date last insured, [Plaintiff] was
unable to perform any past relevant work.

. . .

10.  Through the date last insured, considering
[Plaintiff]'s age, education, work experience, and
residual functional capacity, there were jobs that
existed in significant numbers in the national economy
that [she] could have performed.

. . .

11.  [Plaintiff] was not under a disability, as defined
in the . . . Act, at any time from July 31, 2016, the
alleged onset date, through December 31, 2021, the date
last insured.

(Tr.  18-33  (bold  font  and  internal  parenthetical  citations
omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security
Commissioner's denial of social security benefits."  <u>Hines v.</u>

4

_Barnhart_, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." _Frady v. Harris_, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." _Oppenheim v. Finch_, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." _Hines_, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" _Hunter v. Sullivan_, 993 F.2d 31, 34 (4th Cir. 1992) (quoting _Richardson v. Perales_, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." _Mastro v. Apfel_, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." _Hunter_, 993 F.2d at 34 (internal quotation marks omitted).

5

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]  "To regularize the

_____

[3] The Act "comprises two disability benefits programs.  [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed.  The Supplemental Security Income Program . . . provides benefits to indigent disabled persons.  The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects

6

adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[4] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step

_____

relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

[4] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

determines if the claimant is 'severely' disabled.  If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177.  Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[5] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled.  Id. at 179-80.  However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65.  If, at this step, the government cannot

_____

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

8

carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. <u>Hines</u>, 453 F.3d at 567.[6]

### B. Assignments of Error

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ erred by misstating the contents of [the] ME['s] testimony wherein [she] testified [Plaintiff] was disabled due to equaling a listed impairment[, and] then using th[at] misstatement to discount the supportability and consistency of [the ME]'s opinion" (Docket Entry 7 at 6 (bold font and block formatting omitted); <u>see also</u> Docket Entry 9 at 1-4); and

2) "[t]he ALJ erred by denying [Plaintiff]'s claim due to alcohol abuse without performing the requisite two-tiered analysis" (Docket Entry 7 at 15 (bold font and block formatting omitted); <u>see also</u> Docket Entry 9 at 4-6).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 8 at 12-21.)

---

[6] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. <u>See, e.g.</u>, <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

## 1. ME's Testimony

In Plaintiff's first issue on review, she maintains that "[t]he ALJ erred by misstating the contents of [the] ME['s ] testimony wherein [she] testified [Plaintiff] was disabled due to equaling a listed impairment[, and] then using th[at] misstatement to discount the supportability and consistency of [the ME]'s opinion." (Docket Entry 7 at 6 (bold font and single-spacing omitted); see also Docket Entry 9 at 1-4.) More specifically, Plaintiff contends that "[t]he ALJ discounted [the ME]'s opinion . . . []as based largely, if not solely, on [Plaintiff]'s hearing testimony" (Docket Entry 7 at 12 (citing Tr. 21-23, 29-30)), but that the ME "supported her testimony with multiple citations to the evidence of record" (id. (citing Tr. 103-08 (containing ME's citation to Tr. 502, 527, 547, 571, 621, 693, 732))). Plaintiff additionally faults the ALJ for observing that the ME "'stated that [Plaintiff]'s neurologist[, Dr. Karen M. Aquino,] did not mention [Plaintiff's] alcohol use being linked to her seizures'" (id. at 13 (quoting Tr. 29)), when the ME actually testified that Dr. Aquino "'ha[d]'t specifically talked about [Plaintiff] *having seizures due to alcohol withdrawal symptoms*'" (id. (italics in original) (quoting Tr. 111-12)). Plaintiff thus argues that, "[c]ontrary to the ALJ's findings, which misstate [the ME]'s testimony, [the ME]'s opinion does not conflict with the opinions of [Dr. Aquino]." (Id.) According to Plaintiff, "this Court cannot review the ALJ's findings that [the ME]'s opinion is

10

neither supported nor consistent with the evidence of record because the ALJ misstated [the ME]'s opinion in making his findings." (Id. at 14 (citing Derek L. v. Kijakazi, No. 3:20CV70, 2022 WL 636410, at *7 (W.D. Va. Mar. 3, 2022) (unpublished), recommendation adopted, 2022 WL 907196 (W.D. Va. Mar. 28, 2022) (unpublished), Lindsey v. Commissioner of Soc. Sec., No. 3:20CV1127, 2021 WL 4472211, at *4 (N.D. Ohio Sept. 30, 2021) (unpublished), and Sommerville v. Commissioner, Soc. Sec. Admin., No. 1:16CV3358, Docket Entry 23, at 3 (D. Md. Oct. 4, 2017) (unpublished)).) For the reasons explained in more detail below, Plaintiff's contentions lack merit.

For benefits applications filed on or after March 27, 2017 (such as Plaintiff's (see Tr. 350-54)), the SSA has enacted substantial revisions to the regulations governing the evaluation of opinion evidence. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Under the new regulations, ALJs need not assign an evidentiary weight to medical opinions and prior administrative medical findings or accord special deference to treating source opinions. See 20 C.F.R. § 404.1520c(a) (providing that ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a

11

claimant's] medical sources").[7]  Instead, an ALJ must determine and "articulate in [the] . . . decision how <u>persuasive</u> [he or she] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record."  20 C.F.R. § 404.1520c(b) (emphasis added).  Moreover, when a medical source provides more than one opinion or finding, the ALJ will evaluate the persuasiveness of such opinions or findings "together in a single analysis" and need not articulate how he or she considered those opinions or findings "individually."  20 C.F.R. § 404.1520c(b)(1).

In evaluating the persuasiveness of an opinion or finding, the SSA deems supportability and consistency "the most important factors" and thus the ALJ must address those two factors in evaluating the persuasiveness of an opinion or a finding.  20 C.F.R. § 404.1520c(b)(2).[8]  The ALJ must only address the three other persuasiveness factors — the nature and extent of the medical

---

[7] The new regulations define a "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities to perform the physical, mental, or other demands of work activity or to adapt to environmental conditions.  20 C.F.R. § 404.1513(a)(2).  Those regulations also define a "prior administrative medical finding" as a "finding, other than the ultimate determination about whether [a claimant is] disabled, about a medical issue made by [the SSA's] Federal and State agency medical and psychological consultants at a prior level of review."  20 C.F.R. § 404.1513(a)(5).

[8] "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation."  Revisions to Rules, 82 Fed. Reg. at 5853; <u>see also</u> 20 C.F.R. § 404.1520c(c)(1).  "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim."  Revisions to Rules, 82 Fed. Reg. at 5853; <u>see also</u> 20 C.F.R. § 404.1520c(c)(2).

source's relationship with the claimant and area of specialization, as well as the catch-all "other factors that tend to support or contradict" the opinion/finding, 20 C.F.R. § 404.1520c(c)(3)-(5) — when the ALJ finds two or more opinions or findings about the same issue "[e]qually persuasive" in terms of supportability and consistency, 20 C.F.R. § 404.1520c(b)(3).

The ME prefaced her opinion testimony at the hearing by emphasizing her profession as "a psychiatrist and not a neurologist," and thus noted that she did not qualify as "a seizure expert," although she did "have some knowledge of how the two of them work together." (Tr. 103 (emphasis added).) The ME found that Plaintiff "ha[d] panic disorder" since "2006 . . . that's documented well by a neurologist in 2015 . . . on [Exhibit] 1F[ page] 2." (Id. (citing Tr. 502).) The ME further remarked that "neurology has linked the panic attacks to the seizures," and observed "that, when you have a severe panic attack, you start hyperventilating, which can lower your [carbon dioxide], which could prompt a seizure." (Tr. 104.) Accordingly, the ME opined that, "if [Plaintiff] has severe panic attacks, she's likely to . . . have a seizure, which is very problematic for her," but further observed that Plaintiff "ha[d] fairly good control of her panic attacks with antidepressant medications." (Id. (emphasis added); see also Tr. 105 (noting that, in Exhibit 4F at page 10, Dr. Aquino "sa[id], 'With med[ication]s, right now, [Plaintiff]'s

having <u>no seizures . . . or panic attacks</u>' . . . in June 2020, thus indicating that, "in that timeframe, with that med[ication] adjustment, she's had <u>success without seizures or panic attacks</u>" (emphasis added) (quoting Tr. 621)).)

With regard to Plaintiff's alcohol use disorder, the ME testified as follows:

> [Plaintiff] has alcohol use disorder clearly[. I]f you lower the dose of alcohol and you're dependent on alcohol, . . . it can create seizures, but it can also create a lot of anxiety, which could trigger . . . a panic attack. So, if [Plaintiff is] going to drink, she either needs to keep her level really high or very, very, very slowly come down, or get into a detox program and remain off of it, or she's gonna be in this horrible situation where she's gonna have panic attacks and seizures . . . . [Dr. Aquino] does note that [Plaintiff] tapers down to about five drinks a day. So, she's gone from about 15 at the highest down to about five. And that's at [Exhibit] 8F, [at page] 2, in November [sic] of 2021. . . .
>
> . . .
>
> <u>[Dr. Aquino] doesn't want [Plaintiff] to use [alcohol].</u> <u>[Dr. Aquino] talks about [Plaintiff] reducing</u> <u>it</u>. . . . [I]t looks like she . . . stopped at about five to six beers a day. And she needs to keep trying to cut down from that and make a commitment to stop.

(Tr. 105-09 (emphasis added) (citing Tr. 693).)

The ALJ then asked the ME "what limitations would [Plaintiff] have in the workplace" (Tr. 110), and the ME provided the following testimony:

> [B]ecause there hasn't been consistency with getting the seizure disorder completely under control, the panic disorder under control, and because that seems to be problematic since 2018, despite some close follow-up by

14

[Dr. Aquino], . . . I would say that [Plaintiff] equals a listing, in my opinion.

. . .

I have [Listing] 12.06 under [paragraph] A-2. Then, under [paragraph] B, understand, remember, apply information, none. I mean she seems to be very cognitively intact, luckily. Interact with others would be marked as a result of just her inability to really manage the stress of interacting with others, as she notes there. And also, the . . . concern of then having anxiety that could lead to panic attacks that could lead to seizures. Concentration, persisting, or maintaining pace, unless she's actively having panic attacks or seizures, I would put that as none. But adapting or managing oneself, I would put that as marked. Because again, . . . I believe she has low stress tolerance anyway, as a result of her head injury. And . . . her seizure disorder, and, you know, these chronic issues with panic attacks. . . . I would say she . . . doesn't manage stress as well as other people who have not had those problems. And then, if you put her into a work environment, it's gonna be very difficult for her to adapt and manage because she's likely to have a lot of pretty serious problems with anxiety. And again, it could lead to panic attacks or seizures. And so, that would be an equals because, you know, she has a . . . pretty unique situation medically, I would say, between her combination of medical issues that she has.

(Tr. 110-11 (emphasis added) ("A" signal omitted).)

The ALJ thereafter asked the ME if she did not consider "the alcohol use disorder, would [she] still make the finding that [Plaintiff] equals [ L]isting[] 12.06" (Tr. 111), and the ME responded as follows:

Yes. And the reason I'm going to say that is because . . . what I'm finding in the chart is that [Plaintiff] uses alcohol throughout the day, so she's basically using it as an anxiolytic agent, in other words, to keep her anxiety level down. . . . [Dr. Aquino] hasn't specifically talked about [Plaintiff] having seizures due to alcohol withdrawal

15

<u>symptoms</u>. . . . [S]he needs to get off alcohol, but should she stop alcohol, she may have more issues with <u>anxiety</u>, which may make it more difficult for her to manage in the work force. . . . [T]hat's an odd argument but this is a very unique case. And I definitely don't support the fact she's using alcohol. . . . I think if she were off alcohol, she may actually have more difficulties managing in the workplace, because she's using it as an anxiolytic. I mean she really needs to get . . . in with mental health and start working on developing coping skills other than using alcohol to reduce her anxiety during the day.

(Tr. 111-12 (emphasis added).)

Following the hearing, the ALJ found the ME's opinion that Plaintiff "had no limitations in her ability to understand, remember, or apply information . . . persuasive as it [wa]s consistent with the overall medical evidence" (Tr. 20), and found the ME's opinion that Plaintiff "had no limitations in her ability to concentrate, persist, or maintain pace 'unless she is actively having a panic attack or seizure' . . . persuasive based on [the] comprehensive review of the evidence [provided earlier in the ALJ's decision]" (Tr. 21 (quoting Tr. 110)). In contrast, the ALJ "reject[ed]" the ME's opinion that Plaintiff had marked limitations in her ability to interact with others, because the ME "apparently based [that opinion] on [Plaintiff]'s testimony" (id.), "despite there being little, if any, evidence" of her reporting that she "ha[d] anxiety when interacting with others" to Dr. Aquino (id.). Similarly, the ALJ noted his "disagree[ment] with [the ME]'s opinion" that Plaintiff had marked limitation in her ability to adapt and manage herself, because "it appear[ed] to be based almost

16

exclusively on [Plaintiff]'s subjective testimony and the underlying fact of her having a traumatic brain injury as a teenager, and not on any of the objective evidence of no abnormalities on any testing or examinations, no observed seizure or panic attack by any medical professional, or how [Plaintiff] was able to complete her high school education and then work at levels consistent with substantial gainful activity for several years following her traumatic brain injury." (Tr. 22.)

Later in the decision, the ALJ provided further rationale for rejecting the opinion of the ME that Plaintiff's impairments equaled Listing 12.06:

> [The ME] opined that [Plaintiff] "has a pretty unique situation due to her combination of medical issues" and that it was her inability to manage stress from interacting with others, caused by her anxiety disorder secondary to her traumatic brain injury, that led to panic attacks and, if severe enough from higher stress levels, could cause seizures. She further opined that [Plaintiff]'s alcohol use was her attempting to control her anxiety, and that [her] panic attacks and seizures would thus continue in the absence of alcohol use. [The ME] also stated that [Dr. Aquino] did not mention [Plaintiff's] alcohol use being linked to her seizures. This last statement is inconsistent with the record as several of Dr. Aquino's treatment notes included her conclusion that alcohol was a triggering agent for seizures, that it was contributing to [Plaintiff]'s seizures, and interfering with the effectiveness of the prescribed medications to control the seizures. At one point she recorded telling [Plaintiff] that she should not expect to be seizure-free so long as she continues to abuse alcohol. Regarding the other portions of [the ME]'s opinion, the [ALJ] finds them unpersuasive as they are not based on any evidence of the record other than [Plaintiff]'s hearing testimony. [She] has reported stress and alcohol as triggers for her panic attacks and seizures. These events are short-lived, with panic

17

> attacks lasting as little as 1 minute and a maximum of 10
> minutes, and the seizures often lasting only several
> seconds. <u>There is no mention in Dr. Aquino's treatment
> notes of interactions with other people as being a
> trigger for seizures</u>. The [ALJ] must thus dismiss [the
> ME]'s opinion as having insufficient basis in the record.

(Tr. 29-30 (emphasis added) (internal parenthetical citation
omitted).)

a. <u>Supportability</u>

Plaintiff first contests the ALJ's decision to "discount[ the
ME]'s opinion . . . []as based largely, if not solely, on
[Plaintiff]'s hearing testimony" (Docket Entry 7 at 12 (citing Tr.
21-23, 29-30)), arguing that the ME "supported her testimony with
multiple citations to the evidence of record" (<u>id.</u> (citing Tr. 103-
08 (containing ME's citation to Tr. 502, 527, 547, 571, 621, 693,
732))). The Commissioner responds that, although Plaintiff points
to the ME's citation to "various record exhibits while providing a
summary of the evidence" (Docket Entry 8 at 17-18 (citing Docket
Entry 7 at 12-13)), the ME "cited no exhibits in support of her
opinion[s] that Plaintiff had [] marked limitation[s] in
interacting with others . . . [and] in adapting and managing
[her]self" (<u>id.</u> at 18 (citing Tr. 110-11)). In reply, Plaintiff
argues that the Commissioner's attempt to decouple [the ME]'s
summary of the evidence from her opinion regarding [Plaintiff]'s
equaling a listed impairment is flawed because [the ME] expressly
based her opinion about equaling the listed impairment on her

18

review of the record."  (Docket Entry 9 at 2 (citing Tr. 110-11).)
For the reasons that follow, Plaintiff's arguments fall short.

First, as the Commissioner argues, the ME did <u>not</u> cite to
specific portions of the record to support her opinions that
Plaintiff had marked limitations in her ability to interact with
others and to adapt and manage herself.  (<u>See</u> Tr. 110-11.)  As the
above-quoted portions of the ME's testimony show, she linked the
marked finding in interaction to "just [Plaintiff's] inability to
really manage the stress of interacting with others, <u>as she notes</u>
<u>there</u>[ a]nd also, the . . . concern of then having anxiety that
could lead to panic attacks that could lead to seizures."  (Tr. 110
(emphasis added).)  Similarly, the ME defended the marked deficit
in adaptation and self-management by observing that "it's gonna be
very difficult for [Plaintiff] to adapt and manage because she's
<u>likely to have a lot of pretty serious problems with anxiety</u>[, a]nd
<u>again</u>, it could lead to panic attacks or seizures."  (Tr. 111
(emphasis added).)  Thus, the ALJ did not err by discounting the
ME's opinions regarding those areas of mental functioning as
largely based on Plaintiff's subjective hearing testimony.

Second, even if the Court construed the ME's citation to
various pages of the transcript during her initial, general summary
of the evidence as an attempt to cite evidence in support of her
marked limitations in interaction and adaptation/self-management
(<u>see</u> Tr. 103-08 (citing Tr. 502, 527, 547, 571, 693, 732)), those

19

transcript pages do not, in fact, support the ME's marked limitations, because they fail to show that Plaintiff ever reported interaction with others as a trigger for her anxiety or panic attacks. Transcript page 502 contains a visit to Carolyn Nancy Martin, N.P., with Guilford Neurologic Associates on May 21, 2015, which reflects in the "HISTORY" section that, in 2006, a neurologist started treating Plaintiff "for her recurrent episode stereotypical panic attacks, _without triggering event_." (Tr. 502 (emphasis added).) Although the ME cited page 527 of the transcript as reflecting a neurology visit "in January of 2018" documenting that Plaintiff had "[r]ecurrent panic attacks twice per week," and that she had not taken seizure medication "for the past two or three years" (Tr. 107 (citing Tr. 527)), that page actually contains a visit with Dr. Aquino on March 2, 2018, at which Plaintiff reported "a panic attack that apparently progressed to a seizure" (Tr. 527) when she "t[old] her father about [her] _pregnancy_" and "[s]he was _under a lot of stress_" (Tr. 526 (emphasis added)). Transcript page 547 documents a visit to Dr. Aquino on July 16, 2018 (see Tr. 547), at which Plaintiff reported that she had significantly reduced her alcohol intake due to her pregnancy (see Tr. 548), and _does not contain any discussion of Plaintiff's panic attacks or anxiety at all_ (see Tr. 547-51).

The ME cited page 571 of the transcript as reflecting that Plaintiff had two panic attacks per week, drank four to five beers

20

a day, and used her husband's clonazepam (see Tr. 107); however, that information appears in the "HPI" or History of Present Illness, portion of the treatment note which discusses Plaintiff's first visit with Dr. Aquino on January 16, 2018 (see Tr. 570-71). Page 571 actually contains Dr. Aquino's treatment note dated December 5, 2018 (see Tr. 571), which documents an increase in panic attacks and seizures over the past week, as well as the concern of Plaintiff's husband that "stress was contributing to increased seizures," because Plaintiff's "baby was diagnosed with a [ventricular septal defect ('VSD')] with clinical monitoring" (Tr. 570 (emphasis added)). Transcript page 621 reflects a visit with Dr. Aquino on June 29, 2020, at which Plaintiff reported that the addition of a second seizure medication had resulted in her having no seizures or panic attacks in the last month. (See Tr. 621.) With regard to page 693 of the transcript, the ME cited that page as showing Dr. Aquino's "not[ation] that [Plaintiff had] taper[ed] down to about five drinks a day . . . from about 15 at the highest . . . in November of 2021." (Tr. 106 (citing Tr. 693).) That page actually documents treatment by Dr. Aquino on August 5, 2021 (see Tr. 693), at which Plaintiff reported that, the month prior, "[s]he was on the porch with her husband and friends and alerted them she was about to have a panic attack," "they helped her get to the door," "she had a seizure," and "[s]he feels

21

a big part of the seizure is alcohol abuse" (Tr. 694 (emphasis added)).

Put simply, the ALJ did not err by discounting the ME's marked limitations in interaction and adaptation/self-management as based primarily (if not entirely) on Plaintiff's subjective hearing testimony.

b. Consistency

Plaintiff next challenges "the ALJ's finding that the ME's opinion conflicted with Dr. Aquino's opinions, in effect discounting the consistency of [the ME]'s opinion with other evidence of record." (Docket Entry 7 at 13 (citing Tr. 29).) In particular, Plaintiff points to the ALJ's observation that the ME "'stated that [Dr. Aquino] did not mention [Plaintiff's] alcohol use being linked to her seizures'" (id. (quoting Tr. 29)), and argues that observation "misstate[d the ME]'s testimony" that Dr. Aquino "'ha[d]'t specifically talked about [Plaintiff] *having seizures due to alcohol withdrawal symptoms*'" (id. (italics in original) (quoting Tr. 111-12)). According to Plaintiff, "[the ME] acknowledged alcohol use contributed to [Plaintiff's] seizures," and noted Dr. Aquino "had instructed [Plaintiff] to stop using alcohol, but [remarked] that [Plaintiff] had not stopped using alcohol, so there was not a pattern of withdrawal seizures." (Id. (citing Tr. 108-09).) Plaintiff thus argues that, "[c]ontrary to the ALJ's findings, which misstate [the ME]'s testimony, [the ME]'s

22

opinion does not conflict with the opinions of [Dr. Aquino]."
(Id.)  In Plaintiff's view, "this Court cannot review the ALJ's
findings that [the ME]'s opinion is . . . no[t] consistent with the
evidence of record because the ALJ misstated [the ME]'s opinion in
making his findings." (Id. at 14 (citing Derek L., 2022 WL 636410,
at *7, Lindsey, 2021 WL 4472211, at *4, and Sommerville, Docket
Entry 23, at 3).)  Those contentions miss the mark.

As discussed above in the context of Plaintiff's
supportability argument, the ME expressly acknowledged that "[Dr.
Aquino] d[id]n't want [Plaintiff] to use [alcohol]" and "talk[ed]
about [Plaintiff] reducing it" (Tr. 109 (emphasis added)), and then
observed that "[Dr. Aquino] ha[d]n't specifically talked about
[Plaintiff] having seizures due to alcohol withdrawal symptoms"
(Tr. 111-12 (emphasis added)).  Given that testimony by the ME, the
ALJ erred when he found that "[the ME ] stated that [Dr. Aquino]
did not mention [Plaintiff's] alcohol use being linked to her
seizures," and then concluded that such a "statement [wa]s
inconsistent with the record as several of Dr. Aquino's treatment
notes included her conclusion that alcohol was a triggering agent
for seizures" (Tr. 29 (emphasis added)).[9]

That error by the ALJ, however, remains harmless under the
circumstances presented here.  See generally Fisher v. Bowen, 869

_____

[9] The Commissioner did not contest Plaintiff's argument that the ALJ
misstated the ME's testimony, but contended that "no reasonable possibility
[existed] that the ALJ's decision would have been different absent th[at] alleged
error."  (Docket Entry 8 at 19.)

23

F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").  Beyond the ALJ's reliance on the misstated ME testimony, the ALJ cited to substantial evidence which lacked consistency with the ME's marked limitations in interaction and adaptation/self-management.  With regard to interaction, the ALJ noted that  1) "[Plaintiff's husband] described [Plaintiff] as having no problems getting along with . . . others, and [reported] that family and friends come over to visit her once or twice a week[,] . . . and [that she] has never been fired or laid off from a job because of problems getting along with other people" (Tr. 21 (internal quotation marks omitted) (citing Tr. 396-98)), 2) "[Plaintiff] corroborated her husband's answers in her own function report" (id. (citing Tr. 400-07)), 3) "[consultative psychological examiner John K.] Warnken[, M.S. ('CPE Warnken'),] described [Plaintiff] as pleasant and cooperative, and [opined] that she interacted well and would have no problem communicating in a work situation" (id. (citing Tr. 606, 610)), 4) Plaintiff informed CPE Warnken "that [Plaintiff wa]s not easily irritated or aggravated" (id. (citing Tr. 607)), and 5) "[the state agency psychological consultants] both found [Plaintiff] having mild limitations in this domain" (id. (citing Tr. 128, 144)).

Concerning adaptation/self-management, the ALJ observed that 1) "[Plaintiff's husband] described [Plaintiff] as being able to care for their infant child[,] . . . place shopping orders online using a computer, [] handle a checkbook and savings account, [] regularly perform[] household chores such as cooking and cleaning, without difficulty[, and] . . . that she does not handle <u>stress</u> very well as it <u>can cause panic attacks</u>" (Tr. 22 (emphasis added) (internal quotation marks omitted) (citing Tr. 393-95, 398)), 2) "[Plaintiff] agreed with her husband's responses, though added that she is also able to pay bills" (<u>id.</u> (citing Tr. 400-07)), 3) "[Plaintiff] also testified that she was the primary caregiver to their young daughter during the day while her husband worked" (<u>id.</u> (referencing Tr. 101-03)), 4) "[d]uring a neurological examination on January 16, 2018, Dr. [] Aquino noted that [Plaintiff]'s fund of knowledge was appropriate" (citing Tr. 520)), and 5) "[CPE] Warnken noted [Plaintiff] reporting that she does all the chores around the house for her family, takes care of her young daughter, reads her mail and handles her money, and has no difficulties handling her activities of daily living" (<u>id.</u> (citing Tr. 607)).

The ALJ's discussion of that substantial evidence inconsistent with the ME's marked limitations in interaction and adaptation/self-management (<u>see</u> Tr. 21-22), <u>which the ME did not even acknowledge much less discuss in her testimony</u> (<u>see</u> Tr. 103-12), renders harmless the ALJ's reliance on the misstated portion

25

of the ME's testimony.  See <u>Trina v. Saul</u>, No. 6:19CV435, 2021 WL
1181168, at *7 (D. Or. Mar. 29, 2021) (unpublished) ("The ALJ's
finding that [the ME] relied on a single, low IQ score to support
his opinion that [the p]laintiff has a moderate limitation [in
understanding, remembering, or applying information] misstates [the
ME]'s testimony and is therefore not substantial evidence
supporting the ALJ's decision to reject [the ME]'s
opinion. . . .  Because the ALJ's decision to reject [the ME]'s
opinion is supported by other substantial, specific evidence, the
insufficiency of the[ low IQ score] reason[] is harmless."];
<u>Hannah-Walker v. Colvin</u>, No. 2:12CV61, 2013 WL 5320664, at *14
(N.D. Ind. Sept. 23, 2013) (unpublished) ("The ALJ stated in his
decision that [the ME] provided an RFC for light work.  This was
incorrect.  In fact, [the ME] testified that he was not giving an
RFC. . . .  [The p]laintiff contends that the ALJ's
mischaracterization of [the ME]'s testimony requires remand because
it is impossible to determine what RFC the ALJ would have found had
he understood that [the ME] . . . did not provide a specific RFC
finding.  The [c]ourt disagrees.  Although the ALJ gave [the ME]'s
opinion substantial weight, the ALJ did not make his RFC finding
based solely on what he . . . believed to be [the ME]'s RFC for

Case 1:23-cv-00053-LPA   Document 11   Filed 02/15/24   Page 26 of 38

light work." (internal parenthetical citations and quotation marks omitted)).[10]

In light of the foregoing analysis, Plaintiff's first issue on review fails as a matter of law.

## 2. Materiality of Alcohol Abuse

Lastly, Plaintiff maintains that "[t]he ALJ erred by denying [Plaintiff]'s claim due to alcohol abuse without performing the requisite two-tiered analysis." (Docket Entry 7 at 15 (bold font and block formatting omitted); see also Docket Entry 9 at 4-6.) More specifically, Plaintiff contends that "[t]he ALJ violated [SSA] policy regarding [drug and alcohol abuse] consideration . . . because, despite the ALJ's statement that alcohol use '[wa]s not material,' the ALJ treat[ed] alcohol use as material throughout the decision, notably discounting two medical opinions that [we]re supportive of a finding of disability due to alcohol use." (Docket Entry 7 at 16 (quoting Tr. 31, and citing Tr. 28-31).) In particular, Plaintiff points out that the ALJ

---

[10] Plaintiff's reliance on Derek L., Lindsey, and Sommerville to support her assertion that "this Court cannot review the ALJ's finding[] that [the ME]'s opinion is . . . no[t] consistent with the evidence of record because the ALJ misstated [the ME]'s opinion in making [the ALJ's] findings" (Docket Entry 7 at 14 (citing Derek L., 2022 WL 636410, at *7, Lindsey, 2021 WL 4472211, at *4, and Sommerville, Docket Entry 23, at 3)) does not aid her cause. None of those cases involved a remand on the basis of an ALJ misstating the substance of opinion evidence. See Derek L., 2022 WL 636410, at *7 (remanding, in part, because ALJ failed to "articulate any findings as to the supportability of [treating physician]'s opinion" (emphasis added)), Lindsey, 2021 WL 4472211, at *4 (ordering remand, in part, because ALJ failed to adequately explain why she rejected some of treating psychiatrist's opinions), and Sommerville, Docket Entry 23, at 3 (finding remand necessary for re-evaluation of whether the claimant's spinal impairments met or equaled Listing 1.04A, where ALJ misrepresented medical evidence by stating, incorrectly, that no evidence existed of nerve root compression or positive straight leg raise tests).

found CPE Warnken's opinion "'less persuasive regarding the conditions described without alcohol abuse'" (id. at 15 (quoting Tr. 28)), and "discounted [the] ME['s] . . . conclu[sion that Plaintiff] equaled Listing 12.06, in part because the ALJ [incorrectly] found[ that 'the ME ] stated that [Dr. Aquino] did not mention [Plaintiff's] alcohol use being linked to her seizures'" (id. (quoting Tr. 29)). According to Plaintiff, "'the ALJ must base h[is] initial disability determination on substantial evidence of [the p]laintiff's medical limitations without deductions for the assumed effects of substance abuse disorders[, ] and only then may the ALJ separately determine whether [the p]laintiff's substance abuse constitutes a contributing factor material to that determination.'" (Id. at 18 (quoting As-Salaam v. Colvin, No. 1:15CV630, 2016 WL 6078336, at *6 (M.D.N.C. Oct. 17, 2016) (unpublished) (Peake, M.J.) (citation and internal quotation marks omitted), recommendation adopted, slip op. (M.D.N.C. Feb. 10, 2017) (Tilley, S.J.)).) Plaintiff's contentions do not establish a basis for remand.

The Commissioner's regulations and policies set forth a two-step process for ALJs to adjudicate claims involving drug or alcohol abuse. See 20 C.F.R. § 404.1535; see also Social Security Ruling 13-2p, Titles II and XVI: Evaluating Cases Involving Drug Addiction and Alcoholism (DAA), 2013 WL 621536 (Feb. 20, 2013) ("SSR 13-2p"). "As part of that two-step process, an ALJ must

*first* make a determination as to disability by following the five-step [SEP], 'without segregating out any effects that might be due to substance use disorders.'" As-Salaam, 2016 WL 6078336, at *4 (italics in original) (quoting Piccini v. Commissioner of Soc. Sec., No. 13CV3461, 2014 WL 4651911, at *12 (S.D.N.Y. Sept. 17, 2014) (unpublished)). If the ALJ finds that a claimant qualifies as disabled based on a consideration of all of the claimant's impairments, including the drug or alcohol abuse, the ALJ must then determine whether the drug or alcohol abuse constitutes a "contributing factor material to the determination of disability." 20 C.F.R. § 404.1535(a); see also Farkas v. Astrue, Civ. No. 11-242, 2012 WL 750547, at *2 (M.D. Fla. Mar. 8, 2012) (unpublished) ("The [r]egulations make clear that a finding of disability is a *condition precedent* to the [materiality determination]." (italics in original)). To determine materiality, the ALJ must "follow the five-step [SEP] a second time to determine 'whether the claimant would still be considered disabled if [he or she] stopped abusing drugs or alcohol.'" As-Salaam, 2016 WL 6078336, at *4 (quoting Piccini, 2014 WL 4651911, at *12); see also 20 C.F.R. § 404.1535(b)(1) (describing "key factor" in determining whether drug or alcohol abuse qualifies as contributing factor material to disability determination as whether the claimant would still qualify as disabled if he or she "stopped using drugs or alcohol").

29

"In making th[at] determination, [the ALJ] will evaluate which of [the claimant's] current physical and mental limitations, upon which [the ALJ] based [the] current disability determination, would remain if [the claimant] stopped using drugs or alcohol and then determine[s] whether any or all of [the claimant's] remaining limitations would be disabling." 20 C.F.R. § 404.1535(b)(2). If the ALJ determines that the claimant's remaining limitations would not qualify as disabling if he or she stopped using drugs or alcohol, then the ALJ will find that drug or alcohol abuse constitutes "a contributing factor material to the determination of disability," 20 C.F.R. § 404.1535(b)(2)(i), and deny the claim, see 42 U.S.C. § 423(d)(2)(C) (providing that "[a]n individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled"). If, on the other hand, the ALJ finds that the claimant's remaining limitations qualify as disabling, then the ALJ will find that the claimant meets the requirements for disability independent of his or her use of drugs or alcohol, and that the drug or alcohol abuse does not constitute "a contributing factor material to the determination of disability." 20 C.F.R. § 404.1535(b)(2)(ii).

Here, contrary to Plaintiff's assertions, the ALJ proceeded through the five-step SEP analysis "'without segregating out any effects that might be due to substance use disorders,'" As-Salaam,

2016 WL 6078336, at *4 (quoting <u>Piccini</u>, 2014 WL 4651911, at *12 ). At step two, the ALJ found that Plaintiff had severe <u>alcohol use disorder</u>, seizure disorder status pot traumatic brain injury, and panic disorder (<u>see</u> Tr. 18 (emphasis added)), and, at step three, found the state agency psychological consultants' opinions that Plaintiff had only <u>mild</u> limitation in her ability to adapt and manage herself only "partly persuasive" as based, in part, on Plaintiff's "[then-]recent success in limiting her alcohol intake" (Tr. 22 (referencing Tr. 128, 144)), but noted that "<u>more recent evidence document[ed that Plaintiff]'s improvement in alcohol use was only short-lived</u>" (<u>id.</u> (emphasis added)). Thus, the ALJ discounted the consultants' opinions <u>because they did not adequately consider the limiting effects of Plaintiff's alcohol use</u>, and found that Plaintiff had <u>moderate</u> limitation in adaptation/self-management (<u>see</u> Tr. 21-22).

Moreover, in the ALJ's analysis of the RFC, he discussed many of Plaintiff's subjective statements to Dr. Aquino regarding Plaintiff's alcohol use. (<u>See</u> Tr. 25-28.) For example, the ALJ observed as follows:

- on January 16, 2018, Plaintiff admitted drinking four to five beers a day (<u>see</u> Tr. 25 (referencing Tr. 517));

- on May 30, 2018, Plaintiff stated that she drank three beers on the day of her last seizure a week prior (<u>see</u> Tr. 25-26 (referencing Tr. 537));

Case 1:23-cv-00053-LPA   Document 11   Filed 02/15/24   Page 31 of 38

- Plaintiff reported that she had reduced her alcohol intake to "almost none" on July 16, 2018 (Tr. 26 (referencing Tr. 548));

- at a visit on September 12, 2018, Plaintiff "admitted to alcohol consumption prior to [a] seizure" three days earlier (id. (referencing Tr. 559));

- during a treatment visit on December 5, 2018, Plaintiff "admit[ted] to continuing to drink alcohol but . . . not daily" (id. (referencing Tr. 570));

- Plaintiff "admitted to continuing to drink heavily, from 10 am to 8 pm, [involving] 10 mixed drinks with a shot of vodka daily" at a visit on May 27, 2020 (Tr. 27 (referencing Tr. 616)), and Dr. Aquino advised Plaintiff "that she should expect her seizures will continue as long as she is drinking alcohol heavily" (id. (internal quotation marks omitted) (referencing Tr. 618));

- on June 29, 2020, Plaintiff indicated that she had "cut back her alcohol consumption" to "two [drinks] at lunch and then a few more in the afternoon" and that she "fe[lt] better overall" (id. (internal quotation marks omitted) (referencing Tr. 621));

- at visits on October 9 2020, and March 26, 2021, Plaintiff reported that she had drank alcohol "a tad bit less" (id. (referencing Tr. 633)), and described her alcohol use as "still the same," respectively (id. (referencing Tr. 636));

- by August 5, 2021, Plaintiff described her alcohol use as "horrible," stated that she "wakes up and drinks all day," and noted that, "[i]f she d[id] not drink, she g[ot] the shakes," and Dr. Aquino prescribed naltrexone, a medication to help Plaintiff stop drinking (id. (referencing Tr. 694));

- on November 12, 2021, Plaintiff stated that she had stopped the naltrexone due to headaches and fatigue and that she "was having [four] drinks per day" (id. (referencing Tr. 716)).

Those observations make clear that the ALJ considered the effects of Plaintiff's alcohol abuse in discussing the evidence of record.

Furthermore, Plaintiff's contention that the ALJ discounted the opinions of CPE Warnken and the ME "due to alcohol use" like the ALJ in <u>As-Salaam</u> lacks merit. (Docket Entry 7 at 16 (citing Tr. 28-31).) In <u>As-Salaam</u>, another judge of this Court found that the ALJ "improperly discount[ed] the opinions of [a consultative psychological examiner ('CPE')] and [a treating psychiatrist]." <u>As-Salaam</u>, 2016 WL 6078336, at *5. Significantly, the Court noted that, "[i]n assigning only partial weight to th[o]se providers' opinions, the ALJ specifically relied on the fact that the opinions were rendered while [the p]laintiff was still actively using substances." <u>Id.</u> The Court further explained as follows:

> [T]he decision to reject [those] opinion[s] because [they] were made while [the p]laintiff was using drugs and alcohol conflates the analysis and makes it impossible to determine whether the ALJ concluded that [the p]laintiff was not disabled when using drugs and alcohol, or instead was disabled when using drugs and alcohol but was not disabled when she stopped using drugs and alcohol. While either may be the case, by failing to undertake the proper analysis, the ALJ failed to build a logical bridge between her findings and her conclusions, and the Court is left to guess at the basis of the ALJ's determination in this case.

<u>Id.</u>

In direct contrast to <u>As-Salaam</u>, the ALJ here did <u>not</u> discount the opinions of CPE Warnken and the ME "because they were made while Plaintiff was using . . . alcohol," <u>id.</u> The ALJ "f[ound] only the portions of [CPE Warnken's] opinion regarding the

33

functional limits attributed to the combination of alcohol use and seizures persuasive, making [the opinion] less persuasive regarding the conditions described without alcohol abuse." (Tr. 28 (emphasis added).) In other words, because SSR 13-2p tasked the ALJ with requirement that he first proceed through the SEP to determine if Plaintiff qualified as "disabled considering all impairments, including [alcohol abuse]," SSR 13-2p, 2013 WL 621536, at *5, the ALJ properly discounted the portions of CPE Warnken's opinion that provided work-related limitations without considering the effects of Plaintiff's alcohol abuse.

Similarly, as discussed above in the context of Plaintiff's first issue on review, the ALJ rejected the ME's opinions, in part, because the ALJ mistakenly interpreted the ME as having testified that Dr. Aquino "did not mention [Plaintiff's] alcohol use being linked to her seizures." (Tr. 29.) Not only (as discussed above) did that misstatement of the ME's testimony constitute harmless error, but it also showed that the ALJ complied with SSR 13-2p. The ALJ discounted the ME's testimony, in part, because the ALJ believed that the ME misinterpreted Dr. Aquino's records as showing no link between alcohol abuse and seizures. In that regard, the ALJ noted that "several of Dr. Aquino's treatment notes included her conclusion that alcohol was a triggering event for seizures, that it was contributing to [Plaintiff]'s seizures, and interfering with the effectiveness of the prescribed medications to control the

34

seizures." (Id.)  The ALJ's belief that the ME's testimony should have reflected <u>the combined impact of Plaintiff's alcohol abuse and her seizures</u> harmonizes with SSR 13-2p's requirement that the ALJ first determine whether Plaintiff qualified as disabled considering <u>all</u> of her impairments, <u>including the alcohol abuse</u>, see SSR 13-2p, 2013 WL 621536, at *5.

After considering the treatment and opinion evidence, the ALJ provided the following analysis of the intensity, persistence, and limiting effects of Plaintiff's alcohol abuse:

> The entirety of evidence in support of [Plaintiff]'s disability is from [her] subjective reports of symptoms. This includes [her] alcohol use disorder.  No treating physician or medical examiner has recorded [Plaintiff] appearing or acting intoxicated, nor is there other evidence of objective blood alcohol tests, inpatient or outpatient alcohol detox treatment, police records related to inebriation, or any other corroborative evidence.  Over the time period at issue, [Plaintiff] has reported a wide range of alcohol use, including stopping or "almost none" when she was pregnant in 2018, then up to 10 drinks daily in 2020, then down to 4 a day when she showed interest in receiving treatment, and then up to 14 per day thereafter.  The time period from the alleged onset date of disability to 18 months later when [Plaintiff] was first evaluated by Dr. Aquino is, of course, silent regarding [Plaintiff's] alcohol use.  At no point, including in function reports submitted into the record by [Plaintiff] and her husband, has [Plaintiff]'s alcohol consumption purportedly interfered with [her] ability to look after herself or her daughter, perform tasks and chores, or other activities of daily living.  Without additional evidence, especially objective evidence of excessive alcohol consumption, <u>the [ALJ] must find that [Plaintiff's] alcohol use is not material regarding the issue of disability</u>.

(Tr. 31 (emphasis added).)  That analysis further underscores that the ALJ, in compliance with the applicable regulation and SSR 13-

35

2p, considered <u>all</u> of Plaintiff's impairments, <u>including her</u> <u>alcohol use disorder</u>, in his five-step SEP analysis, and then ultimately concluded that Plaintiff did not meet the requirements for disability. The ALJ's above-quoted discussion also explains why, despite finding that Plaintiff's alcohol use disorder caused more than a minimal impact on Plaintiff's ability to perform work-related activities and therefore qualified as a severe impairment at step two of the SEP (<u>see</u> Tr. 18), the ALJ did not include any specific limitations in the RFC to account for Plaintiff's alcohol use disorder (<u>see</u> Tr. 23, 31).

Lastly, because the ALJ found that Plaintiff did not qualify as disabled after considering <u>all</u> of her impairments, <u>including her</u> <u>alcohol use disorder</u>, the ALJ should not have reached the issue of whether Plaintiff's alcohol abuse constituted a contributing factor material to the disability determination. <u>See</u> <u>Seagle v. Astrue</u>, No. 1:11CV307, 2012 WL 6840581, at *5 (W.D.N.C. Dec. 20, 2012) (unpublished) ("A determination as to whether substance abuse is a contributing factor material to the determination of disability is made only after an individual is otherwise found disabled. Since [the p]laintiff was not found disabled, a determination as to the materiality of his substance abuse was not required."), <u>recommendation adopted</u>, 2013 WL 140436 (W.D.N.C. Jan. 11, 2013) (unpublished); <u>Farkas</u>, 2012 WL 750547, at *2 ("The [r]egulations make clear that a finding of disability is a *condition precedent* to

36

the [materiality determination]." (italics in original)).  The ALJ thus erred by "find[ing] that [Plaintiff's] alcohol use [wa]s not material regarding the issue of disability" (Tr. 31); however, that error remains harmless under the present circumstances, see generally Fisher, 869 F.2d at 1057 (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"), because, as discussed above, the ALJ's decision makes abundantly clear that, throughout his SEP analysis, he considered all of Plaintiff's impairments, including her alcohol use disorder, "'without segregating out any effects that might be due to substance use disorders,'" As-Salaam, 2016 WL 6078336, at *4 (italics in original) (quoting Piccini, 2014 WL 4651911, at *12).

In short, Plaintiff has not shown that the ALJ violated 20 C.F.R. § 404.1535 or SSR 13-2p in his assessment of the limiting effects of Plaintiff's alcohol use disorder, and, thus, Plaintiff's second assignment of error fails as a matter of law.

Case 1:23-cv-00053-LPA   Document 11   Filed 02/15/24   Page 37 of 38

## III. CONCLUSION

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is affirmed, and that this action is **DISMISSED** with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

February 15, 2024

Case 1:23-cv-00053-LPA   Document 11   Filed 02/15/24   Page 38 of 38